Filed 10/3/14  P. v. Whitfield CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D065021 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD126762) |
| DEWAYNE WHITFIELD, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Affirmed.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, and Barry Carlton, Deputy Attorney General, for Plaintiff and Respondent.

Dewayne Whitfield appeals from an order denying his petition for resentencing under the Three Strikes Reform Act of 2012 (Reform Act), which provides that eligible

three-strike petitioners "shall be resentenced" as if he or she was a second-strike defendant "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (Pen. Code,[1] § 1170.126, subd. (f).) The court denied Whitfield's petition based on its finding that he posed an unreasonable risk of danger to public safety if released.

On appeal, Whitfield challenges the court's finding of current dangerousness, and argues that we should review the court's finding on a de novo review standard. We conclude the abuse of discretion standard applies to our review and the court did not abuse its discretion in denying Whitfield's petition based on its finding that Whitfield's resentencing would pose an unreasonable risk of danger to public safety.

FACTUAL AND PROCEDURAL SUMMARY

*Twenty-five-Year-to-Life Sentence*

In August 1997, Whitfield was convicted of petty theft with a prior (§§ 484, 666) under a plea bargain in which the court dismissed two counts, robbery (§ 211) and making a terrorist threat (§ 422). Whitfield also admitted two prior strike convictions: a manslaughter conviction in 1988 and a robbery conviction in 1992. As part of the plea bargain, Whitfield stipulated to a 25-year-to-life term and agreed not to move to strike a strike. At the time of this sentencing, Whitfield was 37 years old and his criminal conduct spanned almost his entire life without any meaningful breaks for law-abiding behavior.

---

[1]     All further statutory references are to the Penal Code.

About 15 years later, Whitfield petitioned for resentencing under the recently enacted Reform Act. (§ 1170.126.) The People agreed Whitfield was statutorily eligible for relief based on the nature of his third strike (a petty-theft conviction), but opposed the petition based on a statutory exception precluding resentencing if the defendant "pose[d] an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).)

The court conducted a hearing on the current dangerousness issue. At the hearing, the parties presented documentary evidence regarding Whitfield's prior criminal history and prison record. Whitfield also presented the report of clinical psychologist Dr. Clark Clipson, who performed a psychological evaluation to assess Whitfield's risk of committing violence if released upon resentencing. The following summarizes the documentary evidence presented at the hearing.

*Summary of Criminal History*

In 1977, a juvenile court found 16-year-old Whitfield committed manslaughter based on evidence that he shot a man five times in the head with a .22 caliber revolver and left him at a lifeguard station at the beach. Whitfield was committed to the California Youth Authority, and was discharged in March 1981.

About two years later, in 1983, Whitfield was convicted of disturbing the peace, and was given three years' probation.

About two years later, in October 1985, Whitfield was convicted of several crimes relating to a shoplifting incident at a department store. During the incident, Whitfield threatened and tried to injure security guards with a knife. After he was arrested, Whitfield gave the officers false identification. He was charged with theft, brandishing a

3

deadly weapon, assault, and trespass.  Whitfield pled guilty to one or more of those offenses (the record is not entirely clear), and he was given three years' probation.

The next month, while on probation, Whitfield unlawfully took food items from a market and was convicted of a misdemeanor theft and spent five days in jail.

About five months later, in March 1986, Whitfield was convicted of taking items from a department store, and was sentenced to 180 days in jail.

The next year, Whitfield was arrested for rape by force or fear.  The police report states that Whitfield hit and choked the victim before forcing her to orally copulate him. There is no record of any conviction arising from this arrest.

Several months later, in November 1987, Whitfield committed a crime that resulted in the death of a 72-year-old man and led to his first adult strike conviction.  The victim and his wife were waiting at a bus stop when Whitfield approached them.  The victim told Whitfield to go away.  Whitfield walked away, but returned a few minutes later and—for no apparent reason—forcefully punched the victim in the eye with a closed fist.  Shortly after, the victim had a stroke and died.  The cause of death was hemorrhaging due to blunt impact to the head.  At the time of the crime, Whitfield had a blood alcohol level of .32 and tested positive for cocaine.  Whitfield was originally charged with murder, but pled guilty to manslaughter and was sentenced to six years in state prison.

About three years after he was sentenced for the manslaughter crime, Whitfield was released on parole.  However, within months of this release, Whitfield committed another violent crime.  In November 1991, Whitfield approached a man who was talking

4

on the phone. Whitfield placed him in a chokehold and said " '[e]mpty all of your pockets and don't say nothing.' " The victim gave Whitfield a few dollars, but Whitfield asked for more. The victim then gave him a 20-dollar bill and told the person on the phone to call the police. Whitfield then became angry and choked the victim harder. Whitfield forced the victim to his knees. Whitfield was apprehended shortly after, and in February 1992, Whitfield pled guilty to robbery (§ 211) (his second adult strike offense), and was given three years' probation with 365 days in jail.

About four years after he was released from jail, in March 1997, Whitfield committed the current offense (petty theft with a prior). According to the probation report, this crime occurred when Whitfield attempted to take shoes from a store. When he was approached by a security officer, Whitfield attempted to strike the officer and threatened to " 'kill' " the officer's mother by " 'cut[ting] off her head.' " As noted above, Whitfield was originally charged with petty theft with a prior, robbery, and two strike allegations (along with several serious felony and prison priors), but in exchange for his guilty plea for the petty theft *and* his stipulation to a 25-year-to-life sentence, the robbery and terrorist threat charges were dismissed.

*Summary of Prison Record*

In 1998 through 2000, Whitfield reported hallucinations and engaged in self-mutilation with a razor blade.

In August 1999, Whitfield and his cellmate were written up for boisterous conduct. In this incident, guards heard loud noises coming from Whitfield's cell and when they arrived they saw Whitfield and his cellmate laughing. Later, the cellmate

5

yelled that he was bleeding. When the guard responded, the cellmate lifted his shirt, showing an injury he claimed was a bite mark from Whitfield.

In February 2003, Whitfield "incit[ed] others to commit an act of force or violence." (Capitalization omitted.) This incident occurred when Whitfield and another inmate were yelling at each other and stood close together. After the guards ordered them to cease this activity, Whitfield continued yelling and the other inmate struck Whitfield in the face.

The next day, Whitfield engaged in mutual combat. A guard observed Whitfield and another inmate fighting. The guard saw Whitfield pursuing another inmate who was trying to back away. Both inmates were throwing punches.

In May 2004, Whitfield used a razor blade to inflict injuries to himself.

In December 2009, Whitfield scored "unsatisfactory" regarding his attitude toward fellow inmates, supervisors, and staff; effort displayed in assigned work; teamwork and participation; learning ability; and quality and quantity of work. (Capitalization omitted.) Whitfield's supervisor said he "continues to be unreceptive to verbal counseling and fails to comply with" the job assignments. Four years earlier, Whitfield had similarly scored "below average" regarding his attitude toward supervisors and staff, effort displayed in assigned work, teamwork, and participation. (Capitalization omitted.)

*Psychological Evaluation*

Clinical psychologist Clark Clipson performed a psychological evaluation in preparation for the section 1170.126 hearing, and based on that evaluation opined that Whitfield "DOES NOT pose an 'unreasonable' risk to public safety if released . . . ."

6

However, Dr. Clipson also concluded that Whitfield is "at moderate risk to commit a violent offense." He said Whitfield's "most significant risk factors are his personality disorder, his relationship instability, substance abuse, lack of personal support and prior failures while on supervision. His history of violence is also of concern, although the severity and frequency of his violent behavior has decreased." Dr. Clipson noted that Whitfield has made progress in various areas, including that he is not known to have abused drugs while incarcerated, and his "only violent acts while in prison have been rather minimal, occurring over a period of two days ten years ago." Based on his analysis of all risks, Dr. Clipson opined that "Whitfield is considered at low-moderate risk to commit a violent offense in the future."

Dr. Clipson also described Whitfield's statements about his prior crimes. With respect to the juvenile manslaughter crime, Whitfield denied he shot the victim, and said he had given the gun to another person who shot the victim. Whitfield also attempted to excuse or justify his conduct relating to several other crimes, stating, for example, that he did not know why he hit the 72-year old man and that he was " 'on crack' " at the time. With respect to the rape charge, he said that: "I knew her. She had stolen my money, and I was trying to get it back. There was no oral copulation."

*Hearing and Ruling*

At the hearing, defense counsel acknowledged that Whitfield had "very serious strike priors," but argued the evidence did not show current dangerousness because he "has had no violence in the past 10 years and the only violence was a mutual combat fight in 2003" and he no longer has a drug or alcohol problem. She noted that Whitfield has

7

the lowest classification score "a life inmate can have in the CDC." She acknowledged that Whitfield has a "serious drug problem," but maintained that "it is in remission because he has remained sober" during his incarceration. Defense counsel stated that Whitfield would stipulate to post-release community supervision because he recognizes that he needs services and access to his medication. Defense counsel also said Whitfield has a supportive mother, who is "ready, willing and able to take him in."

In opposing the resentencing petition, the prosecutor emphasized the seriousness of Whitfield's prior offenses and the fact that his commitment offense included threats made to a security officer. He also discussed the fact that many of Whitfield's prior violent offenses involved substantial violence or threats of violence. He also stated that "although [Whitfield] did not commit serious violence offenses while incarcerated, there are a few things that give the People pause, specifically a 2004 incident where he cut himself with a razor blade and a 2003 incident where he was involved in mutual combat and inciting violence with another inmate.

After considering the submitted documents and arguments, the court denied Whitfield's resentencing petition. The court stated that although Whitfield is statutorily eligible for resentencing, Whitfield remained "an unreasonable danger to public safety." The court added this explanation:

> "And Mr. Whitfield, I'm sorry. I've looked at your record. The problem is you've already killed two people, one of whom was someone you didn't even know, and it was out of the blue. You just hit him, and he suffered [ a] stroke[ ] and he died. And certainly the penalty for that is severe, but it was necessary in this case to protect society. [¶] The problem is you have a history of violent acts, and it seems as though the way you resolve conflict is through violence.

8

And in case the first homicide didn't register as an intentional homicide, certainly the one before that did where you shot somebody five times in the head. And I know you say you didn't do that, but it would be unbelievable to me that you would take responsibility for a homicide of that nature that you didn't do and there were witnesses. So it's established you did shoot somebody in the head five times. And the problem is that that creates, in my mind, the fact that you were an unreasonable danger to public safety. And I decline to resentence . . . in this matter. That's where we are."

DISCUSSION

I. *Applicable Legal Principles*

In 2012, the voters passed the Reform Act which changed former law so that a 25-year-to-life sentence for a third strike would be imposed only if the current offense is a serious or violent felony or if the prosecution has pled and proved an enumerated disqualifying factor. (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167-168; see *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1285-1286 (*Kaulick*).) The Reform Act also provided for retroactive relief for certain incarcerated prisoners. (*Ibid.*) The Act allows a defendant sentenced to an indeterminate life term under prior Three Strikes law to file a petition for resentencing and obtain relief if the defendant is eligible for resentencing under the Act. (See § 1170.126.)

In the trial court proceedings, the People did not challenge that Whitfield is statutorily eligible to be resentenced, but argued he is not entitled to be resentenced based on section 1170.126, subdivision (f) which reads: "If the petitioner [shows he or she is statutorily eligible for resentencing], the petitioner shall be resentenced . . . *unless* the court, *in its discretion*, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (Italics added.)

9

The Reform Act sets forth specific guidelines for the trial court's discretionary evaluation of this "risk of danger" issue. "In exercising its discretion in subdivision (f), the court may consider: [¶] (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g).)

The parties agree the People have the burden to show the "risk of danger" element by a preponderance of the evidence. (See *Kaulick, supra*, 215 Cal.App.4th at p. 1305.) However, they disagree about the proper review standard for determining whether the record supports the court's determination that the People met this burden. Whitfield urges us to apply a de novo standard, whereas the Attorney General advocates for an abuse of discretion standard.

This issue is easily answered by examining the statutory language. The Reform Act expressly provides a trial court with the discretionary authority to determine whether the petitioner poses an unreasonable risk of danger to public safety. In three separate portions of the Act, the statute uses the word "discretion" when referring to the trial court's determination whether the defendant poses an "unreasonable risk of danger." (§ 1170.126, subds. (f), (g) & (g)(3).) Providing trial courts with broad discretionary authority to rule on the resentencing issue is consistent with the fundamental purpose underlying the exception: " 'to keep dangerous criminals off the streets.' " (*Schinkel v.*

10

*Superior Court* (2014) __ Cal.App.4th __, __ [2014 WL 4494629].) It is the trial judge who has the opportunity and ability to view the petitioner's attitude and demeanor and consider the record as a whole, and make the case-by-case determination whether the People have proved the petitioner would pose an unreasonable risk of danger to the public.

Because the statute expressly vests discretionary power in the trial court, we are necessarily governed by the deferential abuse of discretion standard in reviewing the court's determinations. (See *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125 (*Rodrigues*).) This review standard applies to similar types of postconviction discretionary decisions. (See *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 531; *People v. Carmony* (2004) 33 Cal.4th 367, 375; *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 974.)

Whitfield contends we should apply a de novo review because the facts relevant to an inmate's criminal history, prison conduct, and psychological status are primarily contained in documents. However, the weighing, balancing, and evaluation of these facts are classic discretionary decisions within the trial court's purview and expertise. Whitfield's reliance on judicial decisions upholding de novo review in other factual contexts is misplaced because those decisions did not involve the interpretation of a statute that specifically directs the court to exercise its discretion in reaching the determination at issue. (See *People v. Adair* (2003) 29 Cal.4th 895 [reviewing findings under section 851.8, subdivisions (b) and (e)]; *People v. Butler* (2003) 31 Cal.4th 1119, 1126-1127 [reviewing findings under section 1202.1, subdivision (e)(6)(A).)

11

We thus hold the abuse of discretion standard applies to the review of the trial court's section 1170.126 discretionary risk-of-danger finding. Under this deferential standard, the court's ruling will not be reversed unless the appellant demonstrates the court exercised its discretion in an " 'arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' " (*Rodrigues, supra*, 8 Cal.4th at pp. 1124-1125.) We must affirm if the record shows the trial court considered the relevant facts and reached an impartial decision in conformity with the law.[2] (*People v. Zichwic* (2001) 94 Cal.App.4th 944, 961.)

## II. *Analysis*

Applying the abuse of discretion standard, the court did not err in concluding the prosecution met its burden to show Whitfield posed an unreasonable risk of danger to public safety. Whitfield committed several violent crimes, two of which resulted in the death of the victim. Whitfield's crimes were often committed against strangers for no apparent reason, and he was the active participant in committing the crimes. Whitfield did not learn from his frequent incarcerations. During Whitfield's lengthy criminal history, each time he was released from prison he would commit another (often similar) crime within a relatively brief period. For example, within months of being released

---

[2]    Relying on a footnote in *Kaulick, supra*, 215 Cal.App.4th 1279, the Attorney General argues the proper review standard is the highly deferential " 'some evidence' " rule akin to reviewing a decision denying an inmate parole. (*Id.* at p. 1306, fn. 29.) We need not reach this issue because the court's conclusion was correct even under the traditional abuse-of-discretion standard that incorporates a substantial-evidence type review. (See *People v. Bennett* (2009) 45 Cal.4th 577, 621.)

from prison after his manslaughter conviction, he physically attacked a bystander in a phone booth and choked him in an effort to obtain money.

Although Whitfield's recent prison record is devoid of violent acts, the court had a reasonable basis to conclude that his lengthy and brutal prior history, rather than his actions in a controlled institutional setting, were more predictive of his future actions. Significantly, there was no evidence showing Whitfield successfully engaged in rehabilitation programs or other activities showing a meaningful change in his attitude, self control, and outlook toward others. Further, the fact that four years earlier Whitfield refused to cooperate with supervisors and work orders, and 10 years earlier Whitfield engaged in physical altercations with other inmates and had a history of using razor blades to harm himself, presents reasonable concerns regarding Whitfield's current ability to follow society's rules and resolve disputes without violence. Additionally, although his current commitment arises from a nonviolent offense (petty theft), the facts show Whitfield engaged in violence in committing this offense, including making a threat of substantial violence against the security officer. The more serious charges were dismissed only after Whitfield stipulated to a 25-year-to-life sentence.

The defense psychologist's report also supports the court's conclusion. Dr. Clipson conducted an extensive psychological examination of Whitfield. Although he opined that Whitfield "DID NOT" present a danger, Dr. Clipson acknowledged that Whitfield posed a "low-moderate" or a "moderate risk to commit a violent offense." He observed that Whitfield had been diagnosed with antisocial personality disorder, has difficulty with behavioral self-control, and does not have any close friends or social supports—all

13

factors that increase the likelihood he would engage in further criminal behavior. Dr. Clipson also stated that Whitfield has a "tendency to be impulsive, to blame others for his problems and to act out when faced with negative emotions."

Additionally, Whitfield's excuses and justifications for his past crimes support that he has not taken responsibility for his actions and therefore is at risk for continuing his criminal behavior if released. He denied shooting his victim in 1977; he denied that he threatened security guards in 1985 (although admitted that he pulled a knife on them); and he said that he was on " 'crack' " when he committed several of the other crimes. Similarly Whitfield's statements to Dr. Clipson that many of his crimes were committed while he was under the influence of drugs or alcohol does not help his case. Although there is no evidence that Whitfield currently uses drugs or alcohol, he has lived in a structured institutional setting for the past 15 years, and there is no affirmative evidence showing that Whitfield would have the self-control to avoid these substances if he were to be resentenced and then released from prison, even under a supervised release program.

Whitfield argues the court erred because the statute requires the prosecution to show a " 'current' " danger to the community and the court's comments reflect that it was relying primarily on the nature of his prior crimes. We agree the focus of the Reform Act's retroactive relief provisions is on the inmate's current dangerousness, but the statute specifically permits the court to consider the "petitioner's criminal conviction history, including the type of crimes committed" in determining *current* dangerousness. (§ 1170.126, subd. (g)(1).) In reviewing the court's comments and the record as a whole,

14

we are satisfied the court understood the proper standard and properly evaluated the facts under that standard. (See *People v. Thomas* (2011) 52 Cal.4th 336, 361-362; Evid. Code, § 664.) The fact that the court used the past tense when discussing dangerousness ("you *were* an unreasonable danger to public safety") does not show the court misunderstood the governing standard. (Italics added.) Because the statute specifically permits the court to rely on a petitioner's past conduct as a predictor for his current dangerousness, the court did not abuse its discretion in focusing on the violent nature of his prior crimes. (§ 1170.126, subd. (g)(1).) Moreover, as stated above, the fact that Whitfield has a recent nonviolent record in prison does not show his conduct would be similar when he is outside the structured and controlled environment.

In his appellate briefs, Whitfield discusses various factors showing that he may no longer pose a substantial risk of danger, including that his first manslaughter conviction occurred when he was a juvenile and had an " 'under-developed sense of responsibility' "; he has matured in custody; he has "stayed relatively trouble free"; and there is no evidence he has used drugs or alcohol while in prison.

In asserting these arguments, Whitfield is essentially asking us to reweigh the evidence. This is not the proper role of an appellate court. This court does not reevaluate the relevant factors or substitute its judgment for that of the trial court, particularly on the issue of an inmate's current dangerousness under the Reform Act. "We will not interfere with the trial court's exercise of discretion 'when it has considered all facts bearing on the [issue].' " (*People v. Downey* (2000) 82 Cal.App.4th 899, 910.) If the trial court considered the proper factors, we must affirm unless the court reached a decision that is

15

"arbitrary, capricious or patently absurd . . . ." (*People v. Jordan* (1986) 42 Cal.3d 308, 316.)

The court's decision was not arbitrary or capricious. There was substantial evidence in the record showing Whitfield would pose an unreasonable threat to public safety if he was resentenced and released. Thus, Whitfield has not demonstrated the trial court's finding was an abuse of discretion.

DISPOSITION

Order affirmed.

HALLER. J.

WE CONCUR:

McCONNELL, P.J.

O'ROURKE, J.

16